**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE NEW YORK TIMES COMPANY, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF DEFENSE, a/k/a <br> DEPARTMENT OF WAR, *et al.*, <br><br> *Defendants*. | Civil Action No. 26-1690 (PLF) |

**<u>DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 1

    I.     Plaintiffs' reply-brief evidence fails to undermine the Parnell Declaration. ................... 1

    II.    Plaintiffs' reply-brief evidence fails to undermine the Valdez Declaration. .................... 5

    III.   Plaintiffs' reply-brief evidence about changes to the security status of the Pentagon
        Press Office is irrelevant to Plaintiffs' preliminary-injunction motion ........................... 8

CONCLUSION .................................................................................................................. 11

## TABLE OF AUTHORITIES

**CASES**

*AFGE v. Carmen*,
669 F.2d 815 (D.C. Cir. 1981)...................................................................................... 9

*Assoc. Press v. Budowich*,
2025 WL 1649265 (D.C. Cir. June 6, 2025)............................................................... 11

*Ateba v. Jean-Pierre*,
2023 WL 5748567 (D.D.C. 2023) .................................................................................. 6

*Ateba v. Leavitt*,
133 F.4th 114 (D.C. Cir. 2025)....................................................................................... 6

*Branzburg v. Hayes*,
408 U.S. 665 (1972)......................................................................................................... 9

*Cornelius v. NAACP L. Defense & Educ. Fund, Inc.*,
473 U.S. 788 (1985)......................................................................................................... 8

*Flynt v. Rumsfeld*,
355 F.3d 697 (D.C. Cir. 2004)........................................................................................ 7

*Greer v. Spock*,
424 U.S. 828 (1976)......................................................................................................... 9

*Hutchins v. Dist. of Columbia*,
188 F.3d 531 (D.C. Cir. 1999) (en banc)....................................................................... 3

*JB Pictures, Inc. v. Dep't of Defense*,
86 F.3d 236 (D.C. Cir. 1996)..................................................................................... 7, 11

*Jones Lang LaSalle Americas, Inc. v. NLRB*,
128 F.4th 1288 (D.C. Cir. 2025)..................................................................................... 3

*Mullins v. City of New York*,
626 F.3d 47 (2d Cir. 2010) ............................................................................................. 3

*New York Times Co. v. Dep't of Defense*,
2026 WL 962252 (D.D.C. Apr. 9, 2026)........................................................................ 8

*New York Times Co. v. U.S. Dep't of Defense*,
2026 WL 1179440 (D.C. Cir. Apr. 27, 2026)................................................................. 3

*Railway Labor Execs. Ass'n v. Nat'l Mediation Bd.*,
   583 F. Supp. 279 (D.D.C. 1984) .................................................................................... 9

*United States v. Kokinda*,
   497 U.S. 720 (1990) .................................................................................................... 9

*University of Texas v. Camenisch*,
   451 U.S. 390 (1981) .................................................................................................... 3

## STATUTES

10 U.S.C. § 2674 ........................................................................................................... 9

**INTRODUCTION**

Despite filing dozens of pages of new evidence with their reply brief, Plaintiffs fail to carry their own evidentiary burden, and they do not refute, undermine, or even contest Defendants' key contentions. Plaintiffs instead largely talk past Defendants' evidence.

First, the Parnell Declaration explained that the escort requirement focuses on reducing unauthorized disclosures of controlled unclassified information (CUI) and classified national security information (CNSI). Plaintiffs' new declarations respond that the escort requirement has not reduced disclosures of non-public information in general, without once contesting that journalists previously obtained unauthorized disclosures of CUI and CNSI on a regular basis and without once claiming that journalists continue to obtain unauthorized disclosures of CUI and CNSI at the same rate under the escort requirement.

Second, the Valdez Declaration explained that no PFAC holder has been unable to enter the Pentagon because of an inability to arrange an escort and that escorts can be available immediately upon request and for impromptu meetings arranged when a journalist is already in the Pentagon for another meeting. Plaintiffs' response talks past the Valdez Declaration without disputing any of its particulars and fails to establish irreparable harm.

Last, Plaintiffs' reference to the designation of one of the press offices in the Pentagon as a Sensitive Compartmentalized Information Facility (SCIF) carries no weight in this challenge to the escort requirement.

**ARGUMENT**

**I.      Plaintiffs' reply-brief evidence fails to undermine the Parnell Declaration.**

Plaintiffs' reply-brief evidence fails to undermine the justification for the Interim Policy explained in the Parnell Declaration. The Parnell Declaration explains that the Department adopted the Interim Policy, including the escort requirement, in order to avoid a reversion to the pre-

1

October Policy status quo. ECF No. 11-3 ("Parnell Decl.") at ¶ 13 ("I adopted the escort requirement … in order to address the risk to the security of sensitive controlled and classified information within the Pentagon … which would exist if the Department had to return to the pre-October Policy status quo."). Under that pre-October Policy status quo, the Pentagon Press Office "was contacted by journalists on a regular basis—often monthly, and sometimes multiple times per month—regarding information they had obtained that was sensitive or classified, including information relating to operational plans, intelligence assessments, diplomatic communications, and force posture decisions." *Id.* at ¶ 4; *see* ECF 12-9 ("Stevenson Decl.") ¶ 18 ("It is the Times's practice to always engage with Public Affairs officials at the Department before publishing any story that has potentially sensitive or disputed elements.").

The Parnell Declaration also explained why the Department concluded "that unescorted access to the Pentagon was a significant contributing factor to the frequency with which controlled and classified information was reaching journalists." Parnell Decl. ¶ 6. Journalists "who regularly contacted the Pentagon press office regarding controlled or classified information they had obtained[] frequently used their access to closely monitor activity in and out of the Joint Staff spaces," which were "located in close proximity to" the Correspondents' Corridor. *Id.* ¶ 7. When many journalists "no longer maintained a persistent, unescorted presence near sensitive spaces in the Pentagon after they surrendered their PFACs following implementation of" the October Policy, "the frequency with which the Pentagon press office was contacted by journalists regarding sensitive, controlled or classified information" they had obtained "dropped dramatically," from "a

2

regular pattern of contacts involving such information to a small number of isolated incidents." *Id.* ¶¶ 8-9.[1]

The D.C. Circuit concluded that this explanation sufficed to "support[] [the Department's] claim that" the escort requirement "furthers important national security interests." *New York Times Co. v. U.S. Dep't of Defense*, 2026 WL 1179440, at *2 (D.C. Cir. Apr. 27, 2026).[2] And nothing Plaintiffs submitted with their reply brief changes the factual picture to undermine that finding. Instead, Plaintiffs' reply-brief evidence is consistent with the Department's explanation and undermines Plaintiffs' claims of irreparable harm.

To start, Plaintiffs do not factually contest any part of the Parnell Declaration's factual content. They do not contest that journalists contacted the Department regularly regarding classified information or controlled unclassified information that the journalists had obtained without authorization. They do not claim that journalists continued to obtain classified information or controlled unclassified information as frequently or more frequently under the October Policy or under the Interim Policy's escort requirement as they did prior to October 2025. And they do not contest that journalists frequently used their unescorted access to monitor activity in and out of the Joint Chiefs space. They even undermine any suggestion that journalists continued to obtain

---

[1] Plaintiffs urge the Court to ignore this declaration as containing hearsay, but "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits," *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981), and district courts frequently and permissibly "rely on hearsay evidence for the limited purpose of determining whether to award a preliminary injunction," *Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010) (collecting cases across circuits).

[2] Plaintiffs assert in passing, in a footnote in their reply brief, that issue preclusion compels the conclusion "that the Pentagon's pre-October approach to press access protected safety and security." Reply at 1 n.1. Plaintiffs forfeited that argument by raising it only in a "cursory argument made only in a footnote," *Hutchins v. Dist. of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) (en banc), and failing to raise it "until the reply brief," *Jones Lang LaSalle Americas, Inc. v. NLRB*, 128 F.4th 1288, 1296 (D.C. Cir. 2025). Defendants accordingly do not address it further.

classified or controlled unclassified information but did not contact the Pentagon press office about it as frequently, by emphasizing that the New York Times retains its "no surprises" policy and omitting any suggestion that other outlets have changed such policies. *See* Stevenson Decl. ¶ 18 ("It is The Times's practice to always engage with Public Affairs officials at the Department before publishing any story that has potentially sensitive or disputed elements," and Plaintiffs "have not changed that approach."); ECF 12-8 ("Supp. Barnes Decl.") ¶ 10. In sum, nothing in Plaintiffs' evidence contests or undermines the justification for adopting the escort requirement (for example, their declarations do not claim that journalists were not in fact obtaining unauthorized disclosures of classified information on a regular basis before October 2025). And nothing in Plaintiffs' evidence contests the efficacy of the escort requirement for reducing the frequency of those unauthorized disclosures of classified or controlled unclassified evidence (for example, their declarations do not claim that journalists are continuing to obtain unauthorized disclosures of classified information at the same rates as before).

Plaintiffs' reply-brief evidence instead focuses on "non-public" information—not the classified or controlled unclassified information the Interim Policy seeks to protect. *See* ECF 1-1 at 14. Much information is non-public but is not classified or controlled unclassified information. *See* Stevenson Decl. ¶ 14 ("[J]ournalists frequently learn information that is not classified but is also not public."). For example, various personnel decisions, such as certain hiring, firing, and promotion decisions, are not routinely made public but do not constitute classified or controlled unclassified information. So when Stevenson attests that New York Times journalists have continued to obtain "non-public" information at similar rates as before the October Policy or the Interim Policy, *id.* ¶¶ 15-17, that does nothing to contradict or undermine the Parnell Declaration's discussion of CUI and CNSI. Instead, the upshot of the declarations is that the Interim Policy is

reducing unauthorized disclosures of *classified and controlled unclassified* information, without reducing journalists' ability to identify and report *non-public* information that falls outside those two categories—meaning that Plaintiffs cannot establish irreparable harm absent a preliminary injunction, or show that the escort requirement is over- or underinclusive, irrational, unreasonable, burdensome, and the like.

## II.    Plaintiffs' reply-brief evidence fails to undermine the Valdez Declaration.

Plaintiffs do no better with their reply-brief evidence regarding the Valdez Declaration. That declaration explains that, to date, "no PFAC holder has been unable to enter the Pentagon because of an inability to arrange an escort," that escorts can be available "on short notice, including immediately" for in-person conversations, and that escorts can accompany journalists for impromptu meetings arranged when a journalist is already in the Pentagon for another meeting. Valdez Decl. ¶¶ 6-7, 10-11. The Supplemental Barnes Declaration and Stevenson Declaration express concern that the escort requirement is incompatible with conversations on short notice or with impromptu stops in the building, but never claim Valdez Declaration is inaccurate in any of the particulars just discussed.

Instead, Plaintiffs' reply-brief declarations pivot to arguing that the escort requirement is more burdensome because journalists who wish to have a face-to-face conversation inside the Pentagon must contact a source in advance to set up the conversation, request an escort, and "wait for the assigned escort to meet" the journalist. Supp. Barnes Decl. ¶ 4; *see id.* ¶ 5; Stevenson Decl. ¶ 12 ("[T]he escort requirement has made it more cumbersome, more inefficient, and less worthwhile" to enter the Pentagon); *id.* (escort requirement "requires far more effort and advanced planning").

It is difficult to see what remains of these claims in light of the uncontested statements in the Valdez Declaration that escorts can be available "on short notice, including immediately" and

5

can facilitate "impromptu" conversations within the building. Valdez Decl. ¶¶ 7, 10-11. And having to wait for an escort—even for up to 45 minutes—was not enough for a First Amendment injury in *Ateba*. *See Ateba v. Leavitt*, 133 F.4th 114, 117 (D.C. Cir. 2025) ("Day-pass holders must wait for an escort to take them from the White House gate to the Press Area, which may take up to 45 minutes."); *id.* at 126 (observing that the challenged delays in processing plaintiff's hard pass "do not 'censor' Ateba" because "the record shows that he is still able to enter the White House Press Area with a day pass"). Indeed, the district court in *Ateba* denied a preliminary injunction in the face of arguments that closely resemble Plaintiffs'. *See Ateba v. Jean-Pierre*, 2023 WL 5748567, at *3-4 (D.D.C. 2023) (rejecting claims of irreparable harm from escorted press access to White House, despite "recogniz[ing] that Ateba is inconvenienced by needing to fill out the form [to request entry] and wait on a press escort").

Plaintiffs' new declarations also have not substantiated what is so difficult about arranging a conversation. If the concern is that sources are not always willing or available to meet with Plaintiffs, or the Department does not always opt to make a source available to Plaintiffs, that is not a consequence of the escort requirement. *See* Supp. Barnes Decl. ¶ 7 ("I visit the Pentagon only if I have a scheduled interview, and those are infrequently approved by the Department."). The escort requirement does not control whether anyone within the Pentagon is willing or available to speak with Mr. Barnes or any other journalist, and an injunction against the escort requirement would not require any Department employees to clear their calendars to speak with Mr. Barnes or other journalists. If sources are willing to speak to Plaintiffs, it is undisputed that the escort requirement will not keep him from speaking with them. But if Plaintiffs' concerns instead arise from the willingness of sources to speak with them, those concerns will not be resolved by a preliminary injunction against the escort requirement.

Plaintiffs' reply-brief declarations also claim that the escort requirement leads to less nuanced reporting. *See* Supp. Barnes Decl. ¶ 7 (unescorted access permitted "the kind of knowledge and context that is critical to in-depth, informed reporting"); *id.* ¶ 5 ("more context," "more nuanced understanding of the issues"); Stevenson Decl. ¶ 12 ("information and context"). That does not suffice for a First Amendment injury or a claim of irreparable harm premised on the existence of a First Amendment injury. *See* Reply Br. 22 (claiming irreparable harm premised on the "loss of First Amendment freedoms" (citation omitted)). It is amply established that "freedom of speech [and] of the press do not create any per se right of access to government ... activities simply because such access might lead to more thorough or better reporting." *Flynt v. Rumsfeld*, 355 F.3d 697, 703 (D.C. Cir. 2004) (quoting *JB Pictures, Inc. v. Dep't of Defense*, 86 F.3d 236, 238 (D.C. Cir. 1996)). And the Stevenson Declaration is emphatic that Plaintiffs will continue to be able to get scoops under the escort requirement. Stevenson Decl. ¶ 17 (asserting that a contrary conclusion would be "preposterous"). Plaintiffs must show more than that they would find additional access useful in order to establish irreparable harm or show that they are likely to succeed on the merits.

Plaintiffs also express concerns that junior reporters will be less able to develop relationships within the Pentagon. But—setting aside that this concern is vulnerable to the same response just given—Plaintiffs seek a preliminary injunction only as to New York Times PFAC holders, and they have not provided evidence (even with their reply brief) that any New York Times PFAC holders are junior reporters who will be imminently, certainly, and irreparably harmed on this theory while this case is being litigated. *See* Proposed Order, ECF 6-22 at 2 (requesting an injunction on behalf of "Mr. Barnes or [certain] persons … who are employed by, working on behalf of, or otherwise associated with The Times"). Nor have they come close to establishing that

the First Amendment entitles new reporters to special access to government buildings in order to establish relationships with sources. Plaintiffs have not begun to carry their burden on this point.

### III. Plaintiffs' reply-brief evidence about changes to the security status of the Pentagon Press Office is irrelevant to Plaintiffs' preliminary-injunction motion.

Last, Plaintiffs assert that Defendants have "continue[d] to retaliate against" them by "redesignat[ing]" the Pentagon Press Office "as a SCIF." Reply Br. at 12. They claim this shows "palpable bad faith" and "proves Defendants' retaliatory purpose." *Id.* at 12-13. They even say it violates the Court's order regarding the motion to compel compliance that they filed in their previous case. *Id.* (citing *New York Times Co. v. Dep't of Defense*, 2026 WL 962252, at *11 (D.D.C. Apr. 9, 2026)). As evidence of this change, Plaintiffs attached a news article to their reply brief. ECF 12-7.

The article Plaintiffs cite includes a brief explanation for the change from Acting Pentagon Press Secretary Joel Valdez: Speechwriters from the Office of the Secretary of War work in the Pentagon Press Office and "routinely handle classified material." ECF 12-7 at 3. The change thus permits Pentagon employees who work in the space to do their work more efficiently, "without decamping for a separate secured room" each time they must refer to classified material. *Id.*

Plaintiffs lack a First Amendment right to enter any particular room within a government office building. They likewise lack a First Amendment right to require the government to arrange or manage personnel and offices within its own buildings in ways that Plaintiffs prefer. "Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius v. NAACP L. Defense & Educ. Fund, Inc.*, 473 U.S. 788, 799-800 (1985). And the government, "no less than a private owner of property, has the power to preserve the property under its control for the use to

8

which it is lawfully dedicated." *Greer v. Spock*, 424 U.S. 828, 836 (1976) (citation omitted); *see, e.g., AFGE v. Carmen*, 669 F.2d 815, 823 (D.C. Cir. 1981) (acknowledging Executive Branch discretion regarding use of federal office space); *Railway Labor Execs. Ass'n v. Nat'l Mediation Bd.*, 583 F. Supp. 279, 283 (D.D.C. 1984) (rejecting challenge to change regarding office space in federal building). The government "has a significant interest in protecting the integrity of the purposes to which it has dedicated the property"—here, serving as the Nation's military headquarters. *United States v. Kokinda*, 497 U.S. 720, 739 (1990) (Kennedy, J., concurring in the judgment); *see* 10 U.S.C. § 2674 (Secretary's authority and responsibility regarding "operation, maintenance, and management of the Pentagon Reservation" and its "efficient," "secure" functioning). Nor do journalists have any special right of access to government facilities or information. *See Branzburg v. Hayes*, 408 U.S. 665, 684 (1972).

Conspicuously missing from Plaintiffs' filings is a claim that redesignating the Pentagon Press Office has made it more difficult to access individuals with whom they wish to speak. Even if journalists cannot meet with sources *inside* the Pentagon Press Office itself, nothing about the change prevents those conversations from happening in any of the spaces surrounding the Pentagon Press Office, and Plaintiffs offer no evidence that this change has in fact interfered in any concrete way with their access to the Pentagon—understandably, since they are not challenging the office space's redesignation.[3]

---

[3] Plaintiffs' passing claim that the change violates the Court's compliance order in their *other* lawsuit is misplaced in a reply brief seeking a preliminary injunction against the escort requirement. As just explained, Plaintiffs have not shown that the reclassification of the office space has had a concrete, material effect on the access, such as access to Pentagon personnel, that they would otherwise have had. And the Court did not purport to forbid *all* changes to the Pentagon that in any way affect the spaces journalists were previously able to enter—as any new designation of any space as a SCIF would—nor did it purport to require Defendants to permit journalists to enter SCIFs, whether newly established or longstanding.

Plaintiffs have long been emphatic—not just in their most recent motion for a preliminary injunction, but also in their complaint, ECF 1 at ¶ 101, and in their motion for summary judgment in their previous lawsuit, *New York Times Co. v. Dep't of Defense*, No. 1:25-cv-04218, ECF No. 10-1 at 6—that they do not seek to access secure portions of the Pentagon like SCIFs. Their claim that the designation of the Pentagon Press Office was somehow in response to their latest statement to the same effect as their previous statements makes little sense. Reply Br. at 12. It simply suggests that no matter the change, no matter the reason, Plaintiffs will argue that it is targeted at them. Any timing apparently also suggests a retaliatory motive to Plaintiffs, too: The Interim Policy was supposedly retaliatory because it was issued *after* the Court's judgment in the previous case, Reply Br. at 1, and the redesignation of the Pentagon Press Office was supposedly retaliatory because it occurred *before* the Court has resolved this motion, as "a preemptive move," Tr. of June 12, 2026 Hr'g at 24.

Plaintiffs' claim of retaliatory motive also makes little sense considering the extent of the change. The change affects only the Pentagon Press Office, which is just one of the press offices within the Pentagon. Each service branch has its own press office, and Plaintiffs say journalists regularly visited all of them. *See* Supp. Barnes Decl. ¶ 5 ("I would make a circuit of the Public Affairs offices around the building—moving, for example, from the Navy Public Affairs Office, to the Army Public Affairs Office," etc.). A change affecting only the office where speechwriters routinely work with classified information, and not the other offices journalists regularly visit, makes good sense if the change is because speechwriters in that one office routinely work with classified information; but it fits poorly with Plaintiffs' claim that it is an attempt to retaliate against the New York Times by closing off access to the Pentagon or to evade any as-yet-unissued decisions by this Court, since it does not affect any of the other press offices.

The upshot of Plaintiffs' argument about the redesignation of the Pentagon Press Office space is that the Department is simply not allowed to make changes to anything even tangentially related to journalists. That is not the law. "[T]he government is not subject to a one-way ratchet, in which any new restriction on access is automatically invalid, or even especially suspect, while any relaxation of limits becomes a new constitutional minimum." *JB Pictures*, 86 F.3d at 240 (considering policy restricting media access to return to the U.S. of soldiers killed abroad). Journalists cannot "adversely possess" access to government spaces or information, "no matter how long [their] tradition of access." *Assoc. Press v. Budowich*, 2025 WL 1649265, at *11 (D.C. Cir. June 6, 2025).

## CONCLUSION

The Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: June 17, 2026                    Respectfully submitted,

                                        BRETT A. SHUMATE
                                        Assistant Attorney General, Civil Division

                                        */s/ Sarah Welch*
                                        SARAH WELCH
                                        Senior Counsel to the Assistant Attorney General
                                        U.S. Department of Justice
                                        Civil Division
                                        950 Pennsylvania Avenue, N.W.
                                        Washington, DC 20530
                                        (202) 514-3180
                                        sarah.e.welch@usdoj.gov

                                        JOSEPH E. BORSON
                                        Assistant Branch Director
                                        Civil Division, Federal Programs Branch
                                        *Counsel for Defendants*

11