# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

THE NEW YORK TIMES COMPANY, *et al.*,

                *Plaintiffs*,

    v.

DEPARTMENT OF DEFENSE A/K/A DEPARTMENT OF WAR, *et al.*,

                *Defendants*.

**Civil Case No. 26-cv-1690 (PLF)**

## SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Theodore J. Boutrous, Jr. (D.D.C. Bar No. 420440)
Katie Townsend (D.D.C. Bar No. 1026115)
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
TBoutrous@gibsondunn.com
KTownsend@gibsondunn.com

Susan Pelletier*
Gibson, Dunn & Crutcher LLP
1700 M Street, NW
Washington, DC 20036
(202) 955-8500
SPelletier@gibsondunn.com

*Counsel for Plaintiffs The New York Times Company and Julian E. Barnes*

*\*pro hac vice application forthcoming*

There is nothing new in the lengthy Sur-Reply filed by the Department of Defense a/k/a Department of War ("Department").  And there is nothing in its rehash of Defendants' prior arguments that undermines, let alone defeats, Plaintiffs' showing that the Interim Policy's escort requirement violates the First Amendment and the Administrative Procedure Act (APA), and that it is inflicting ongoing, irreparable harm.  The escort requirement should be preliminarily enjoined.

## I.  Plaintiffs' Evidence Directly Refutes the Parnell Declaration and Confirms That Defendants' "National Security" Rationale Is Both Post-Hoc and Pretextual.

According to Defendants, "the Parnell Declaration explained that the escort requirement focuses on reducing unauthorized disclosures of controlled unclassified information (CUI) and classified national security information (CNSI)."  Sur-Reply at 1.  That is false.  Parnell asserts—based on the supposed "observ[ations]" of Press Secretary Kingsley Wilson—that after the October Policy was implemented, journalists contacted the Pentagon Press Office less often "regarding *sensitive*, controlled or classified information."  Dkt. 11-3, ¶ 8; *see also id*., ¶¶ 3, 4 (discussing "*sensitive* or classified" information"); *id*., ¶ 11 ("*sensitive* information") (emphases added).  "Sensitive" information is not defined and could refer to *any* non-public information.  As The Times's declarations aver, journalists do not know what information is controlled or classified, let alone what the Department deems "sensitive."  Stevenson Decl., Dkt. 12-9, ¶ 14; *see also New York Times Co. v. Dep't of Defense*, 2026 WL 788689, at *11 (D.D.C. Mar. 20, 2026) ("A journalist cannot possibly know every piece of information" qualifying as CUI or CNSI).  By excising the word, Defendants seek to obscure that they are actually trying to restrict all independent reporting.

Plaintiffs' evidence clearly establishes that it is false that The Times—the *only* news organization that is before this Court—contacted the Pentagon Press Office less, or published less non-public information (*i.e.*, less information that could be considered "sensitive," controlled or classified) after the October Policy went into effect.  *See* Stevenson Decl. ¶ 16 (no reduction in

1

"scoops" or articles relying on non-public information); *id.* ¶ 18 ("no reduction in the frequency of contacts to the Pentagon Press Office by Times journalists").[1]  Defendants' offhand suggestion that The Times has only obtained nonpublic information that is not "classified or controlled" (it ignores "sensitive") since October 2025, such as information about "personnel decisions," Sur-Reply at 4, defies reality and a factual record that includes, among other recent scoops, The Times's reporting about the Department's "growing concern" about "espionage by Israel," Stevenson Decl., ¶ 17—a subject far less anodyne than "personnel decisions."

Defendants' only answer to Plaintiffs' evidence is to misstate Parnell's testimony.  They ignore Plaintiffs' detailed declarations that directly refute the notion that an escort requirement bears any relationship to journalists' access to "sensitive," controlled, or classified information. Experienced journalists and former Department officials agree that "[a] reporter's mere presence in the building" does not provide access to "classified or sensitive information," Barnes Decl., Dkt. 6-17, ¶ 10; Meagher Decl., Dkt. 6-19, ¶ 14; Williams Decl., Dkt. 6-20, ¶ 21.  That is not the reason, as Plaintiffs' declarations establish, that journalists' unescorted access to the Pentagon is valuable. *See* Barnes Decl., ¶¶ 8-11; Burns Decl., Dkt. 6-18, ¶¶ 22–24; Suppl. Barnes Decl., Dkt. 12-8, ¶¶ 5–7; Stevenson Decl. ¶ 4.  Defendants offer nothing but conjecture to the contrary.

The Parnell Declaration's purported explanation for the escort requirement is undeniably an impermissible post hoc rationalization in violation of the APA, and is patently pretextual.  Defendants never try to answer for the fact that the Declaration's proffered "rationale" for the escort

---

[1] Even assuming *other* news organizations' journalists did contact the Press Office less after the October Policy went into effect, that is neither relevant to The Times, nor proves that those journalists were obtaining "sensitive," controlled or classified information less frequently.  It is equally (if not more) plausible that they simply concluded it was unproductive to contact a Press Office who calls journalists "treasonous," suggests they should be "punished" for reporting about the Department, and enacted a viewpoint discriminatory PFAC policy targeting them.  Mot. at 8.

requirement is demonstrably false.  Parnell avers that, after this Court struck down the October Policy's "inducement" provision, he concluded that the escort requirement was necessary because the Department had "no other effective means" of preventing journalists from obtaining sensitive information.  Parnell Decl. ¶ 12; *see* Reply at 8–9.  But, as Plaintiffs explained, the Interim Policy's escort requirement and its "inducement" provision were adopted at the same time.  Reply at 8–9; Transcript at 7:4–19, 46:8–47:11  Even after being given the chance to submit a sur-reply and new evidence, Defendants have no answer to Plaintiffs' argument in the reply brief and at the hearing that Defendants' own stated rationale for the escort requirement is thus demonstrably false, in addition to being an "impermissible post hoc rationalization[]," *DHS v. Regents of the Univ. of California*, 591 U.S. 1, 22 (2020).

## II.  The Valdez Declaration Does Not Defeat Plaintiffs' Showing of Irreparable Harm.

Valdez's assertion that escorts are available "on short notice" and that "no PFAC holder has been unable to enter the Pentagon" because of escort unavailability, Sur-Reply at 5, in no way contradicts or diminishes the irreparable harm to Plaintiffs from the Interim Policy's ongoing violation of their First Amendment rights.  It simply misses the point.  The escort requirement forecloses Plaintiffs' ability to engage in unplanned and informal conversations within the Pentagon, *i.e.*, the ability to "have conversations, follow leads, and ask questions that cannot be planned days or even hours ahead of time."  *See* Suppl. Barnes Decl. ¶¶ 5–7.  Because the escort requirement makes that kind of vital newsgathering and reporting effectively impossible, Times journalists now find "going to the Pentagon is rarely worthwhile," *id*. ¶ 7, and thus that their reinstated PFACs are "essentially worthless," Barnes Decl. ¶ 31.  Nothing about the Valdez Declaration, including its oxymoronic assertion that scheduled escorts can be available for "impromptu" appointments that have already "been approved," Dkt. 11-2, ¶ 7, undermines Plaintiffs' evidence that the escort requirement is imposing serious, ongoing, and unjustified burdens on Plaintiffs' exercise of their

3

First Amendment rights in addition to the irreparable harm that Defendants' blatant First Amendment retaliation alone is imposing on Plaintiffs and the public. *Media Matters for Am. v. Paxton*, 138 F.4th 563, 585 (D.C. Cir. 2025) ("[S]uffering from a campaign of retaliation … in response to the[] exercise of … First Amendment rights … is also an irreparable injury.").

### III. Defendants' Redesignation of the Press Office as a SCIF Underlines Their Bad Faith.

Contrary to Defendants' assertion, Sur-Reply at 8–11, the Department's designation of the Press Office as a SCIF confirms Defendants' improper motive. Defendants have no explanation as to why speechwriters would be handling classified information that is, according to Defendants, illegal to disclose. Some press offices in the Pentagon already have internal SCIFs not accessible to reporters, without barring reporters from those offices entirely. Suppl. Barnes Decl. ¶ 9. Even accepting Defendants' asserted rationale, the Department's relentless, unprecedented efforts to increasingly limit journalists' access to the Pentagon is additional evidence of their aim to punish The Times and other members of the press. Defendants say that a claim challenging the redesignation of the Pentagon Press Office is "[c]onspicuously missing from Plaintiffs' filings," Sur-Reply at 9, but it is "missing" only because Defendants acted *after* Plaintiffs filed their complaint and motion. *See* Dkt. 12-7. That timing illustrates Defendants' ongoing efforts to enact ever-shifting restrictions to avoid providing Plaintiffs the access this Court already ruled they are entitled to.

### IV. Plaintiffs' Motion for Preliminary Injunction Should be Granted.

Defendants' Sur-Reply offers nothing to refute the overwhelming evidence in support of Plaintiffs' Motion. Defendants' attempt to rewrite the Parnell Declaration and rote repetition of the same arguments they previously made about the Valdez Declaration fall far short of demonstrating that the Department had a non-retaliatory basis for imposing the Interim Policy, including its escort requirement, mere days after being ordered to restore meaningful access to the Pentagon for The Times. Mot. at 27–30, 34–36; Reply at 11–14; *New York Times Co. v. Dep't of Def.*, 2026

4

WL 962252, at *8 (D.D.C. Apr. 9, 2026).  Nor do any of Defendants' arguments prove the escort requirement and the burdens it imposes on Plaintiffs' First Amendment-protected newsgathering and reporting are reasonable or viewpoint neutral.  Reply at 4, 17–18 (explaining that government has no authority to censor information merely because it deems it "secret" or "sensitive").  And, finally, even if this Court were to credit Parnell's justification for the requirement, that would not make it consistent with the APA; it remains a post-hoc explanation untethered to the rationale provided at the time the policy was issued—one based on nothing but conjecture divorced from any actual assessment of evidence.  It is textbook arbitrary and capricious agency action.  Reply at 19–21.  Ultimately, and particularly given the record of Defendants' viewpoint discrimination and bad faith, Defendants' hand waving at a post-hoc, half-baked justification does not defeat the ample evidence of the Department's impermissible motive and unreasoned decisionmaking.

Defendants cannot ignore this history.  And, contrary to their arguments, they are issue precluded from contesting (1) that the Department has engaged in viewpoint-discriminatory efforts to limit press access to the Pentagon; and (2) that the security protocols in place at the time the October Policy was adopted (the pre-October "status quo") protected the safety and security of the Pentagon.  Defendants had ample opportunity and reason to introduce their latest call-volume information security rationale in prior litigation involving the October Policy and the Interim Policy; they did not.  Reply at 7–8.  As Plaintiffs have argued throughout this case (not just in a footnote in their reply as Defendants wrongly suggest), those facts are established by this Court's earlier rulings.  *See, e.g.*, Mot. at 1, 27, 30, 32; Reply at 1 & n.1; *see also Koch v. Cox*, 489 F.3d 384, 391 (D.C. Cir. 2007) (party retains ability to "adduc[e] additional support" for broader claims previously raised); *Flyers Rts. Educ. Fund, Inc. v. Fed. Aviation Admin.*, 864 F.3d 738, 748 n.6 (D.C. Cir. 2017) (party does not forfeit authority in support of claim by first citing on reply).

Dated:   June 18, 2026

Respectfully submitted,

*/s/* Theodore J. Boutrous, Jr.

GIBSON, DUNN & CRUTCHER LLP
Theodore J. Boutrous, Jr. (D.D.C. Bar No. 420440)
Katie Townsend (D.D.C. Bar No. 1026115)
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
(213) 229-7000
TBoutrous@gibsondunn.com
KTownsend@gibsondunn.com

Susan Pelletier*
Gibson, Dunn & Crutcher LLP
1700 M Street, NW
Washington, DC 20036
(202) 955-8500
SPelletier@gibsondunn.com

*Counsel for Plaintiffs The New York Times Company and Julian E. Barnes.*

**pro hac vice application forthcoming*