**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE NEW YORK TIMES COMPANY, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DEPARTMENT OF DEFENSE, a/k/a<br>DEPARTMENT OF WAR, *et al.*,<br><br>*Defendants*. | Civil Action No. 26-1690 (PLF) |

**<u>DEFENDANTS' MOTION FOR STAY PENDING APPEAL</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

ARGUMENT............................................................................................................................ 2

    I.    The government is likely to prevail on the merits. ............................................................ 2

    II.   The remaining factors favor a stay..................................................................................... 6

CONCLUSION......................................................................................................................... 7

**TABLE OF AUTHORITIES**

**CASES**

*Learning Res., Inc. v. Trump*,
　784 F. Supp. 3d 209 (D.D.C. 2025) ...................................................................................... 8

*Nat'l Tr. for Historic Pres. in the U.S. v. Nat'l Park Serv.*,
　__ F. Supp. 3d ___, 2026 WL 877779 (D.D.C. Mar. 31, 2026).................................................. 7

*New York Times Co. v. Dep't of Defense*,
　2026 WL 788689 (D.D.C. Mar. 20, 2026) ............................................................................... 3

*New York Times Co. v. U.S. Dep't of Defense*,
　2026 WL 1179440 (D.C. Cir. Apr. 27, 2026).......................................................................... 6

*Nken v. Holder*,
　556 U.S. 418 (2009)................................................................................................................ 2, 6

*Citizens for Resp. & Ethics in Wash. v. Off. of Mgmt. & Budget*,
　791 F. Supp. 3d 29 (D.D.C. 2025) .......................................................................................... 8

*Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*,
　793 F. Supp. 3d 19 (D.D.C. 2025) .......................................................................................... 8

**INTRODUCTION**

The Department moves for an immediate stay pending appeal of the Court's preliminary injunction issued on June 30, 2026. Because the stay factors weigh in favor of allowing the Court of Appeals to assess the constitutionality of the Department's press policies governing physical access to the headquarters of the United States military, the Court should grant the motion. In the alternative, the Department requests a fourteen-day administrative stay to allow for orderly briefing in the D.C. Circuit on the Department's forthcoming stay motion, consistent with the Court's administrative stay of its previous order regarding these challenged provisions. *New York Times Co. v. Dep't of Defense*, No. 1:25-cv-4218 (*NYT I*), ECF No. 59 (Apr. 13, 2026).

The Department is likely to succeed on appeal. The challenged provisions of the Interim Policy impose an escort requirement that applies evenhandedly to all journalists who hold PFACs, and the evidence in the record reflects that the Department issued the provisions in order to secure the Pentagon against unacceptable risks to the security of classified national security information and controlled unclassified information. That looks nothing like a typical retaliatory action: Escort requirements are a common, easily satisfied condition on access to government buildings; the requirement does not punish anyone; and it applies and has been applied categorically, to all journalists with PFACs.

The preliminary injunction compels the Department to allow members of the press to enter and roam the Pentagon unescorted, notwithstanding the Department's judgment—which the D.C. Circuit already credited in staying the Court's last order on these provisions—that continuing to allow that kind of unfettered physical access poses national security risks by, among other things, threatening unauthorized disclosure of specific kinds of sensitive information. Accordingly, the Department requests an immediate stay pending appeal of the Court's preliminary injunction.

1

**ARGUMENT**

In considering a stay pending appeal, this Court considers four factors: the likelihood of success on the merits, the movant's irreparable injury, the balance of harms, and the public interest. *Nken v. Holder*, 556 U.S. 418, 426 (2009).[1]

**I.      The government is likely to prevail on the merits.**

The Court concluded that Plaintiffs are likely to succeed on their retaliation claim. But respectfully, the Department is likely to prevail on appeal.

*First*, the Department is likely to prevail on appeal because Plaintiffs cannot prove a retaliatory motive for the Interim Policy. As the Department has explained, the Court's order regarding the October Policy prevented the Department from mitigating certain security risks, necessitating the use of escorts to ensure that sensitive information would not be improperly disclosed. The Interim Policy's timing confirms the same thing, underscoring that it was adopted in response to the Court's order. The declaration submitted by the decisionmaker who adopted the Interim Policy further explains why it was adopted: in order to secure the Pentagon against the unacceptable risks to information security—and thus national security—that a return to the status quo would present. ECF No. 11-3 (Parnell Decl.) ¶¶ 10-13; *see* ECF No. 11 at 18-25.

The Court reached a contrary conclusion by pointing to "myriad statements by Department officials expressing disdain for reporting by The Times and other 'legacy' media outlets," dating back to "March 2025." Op. 23. But no statement suggested a link between the Interim Policy (let alone the specific provisions against which Plaintiffs sought a preliminary injunction) and any reporting. Statements that are over a year old do not suggest any connection with the challenged provisions. And the Court identified nothing in particular that supposedly drove Defendants to

---

[1] Defendants conferred with Plaintiffs regarding this motion on July 2, 2026. Plaintiffs oppose this motion.

retaliate against Plaintiffs by adopting the challenged provisions, instead pointing to a "consistent stream of derisive comments" about journalists. Op. 23. Troublingly, that boundless theory of retaliation could invalidate any Department action that affects journalists, no matter how remote in time, independently meritorious, or generally applicable. That is inconsistent with the strict causation standards that govern First Amendment retaliation claims. *See* ECF No. 11 at 25 (collecting cases). The Court's conclusion is particularly untenable when timing plainly reveals that the Interim Policy was adopted in order to prevent a reversion to the pattern of repeated unlawful disclosures that persisted prior to the October Policy, as it was adopted just days after the vacatur of the key provisions of the October Policy.

*Second*, the Department is likely to prevail on appeal because it would have adopted the challenged provisions regardless of any retaliatory motive. The Parnell Declaration explains that the Department observed a decrease in disclosures of two categories of sensitive information—controlled unclassified information and classified national security information—when many journalists were no longer physically present in the Pentagon while the October Policy was in effect, and that the Department adopted the Interim Policy, including the escort requirement, in order to address the national security risks posed by renewed physical presence of journalists in the Pentagon without the solicitation-related security screening requirements that the Court excised from the October Policy. *See* Parnell Decl. ¶¶ 4-13; *New York Times Co. v. Dep't of Defense*, 2026 WL 788689, at *20 (D.D.C. Mar. 20, 2026). The Court of Appeals is likely to conclude that the Department would have sought to protect national security by reducing unlawful disclosures of controlled unclassified information and classified national security information, independent of any retaliatory motive. *See* ECF No. 11 at 25-27.

The Court rejected this explanation of the reasons for adopting the challenged provisions because the Parnell Declaration explains the Interim Policy's rationale in more detail than the Interim Policy itself and the Department did not immediately submit the declaration in response to Plaintiffs' compliance motion; because the Department adopted the escort requirement in addition to the Interim Policy's prohibition of intentional inducement of unauthorized disclosures; and because the Court found the explanation "facially dubious." Op. 25-31. That reasoning is erroneous.

At the outset, it is perfectly ordinary—not a sign of pretext or retaliation, *contra* Op. 26— for an agency to explain its reasoning and the factual underpinnings of its reasoning in more detail during litigation than in the agency action itself. For example, an administrative record ordinarily provides additional detail and factual support for an action. That is no basis for discarding the explanation or discrediting the action. Nor is it remotely suspicious or anything other than the ordinary course for a party to supply additional evidence as litigation proceeds. That was particularly so in the previous litigation, where Plaintiffs chose to challenge the Interim Policy as noncompliant with the Court's previous judgment regarding the October Policy rather than on its own terms. *See NYT I*, ECF No. 37 (Mar. 24, 2026). Evidence of irreparable harm to the Department absent a stay pending appeal was not relevant until the Court had ruled for Plaintiffs, and at that point, the Department supplied the Wilson Declaration to prove irreparable harm. *See NYT I*, ECF Nos. 58, 58-1 (Apr. 10, 2026).

Nor is there anything suspicious, *contra* Op. 27-28, about the Interim Policy's adoption of both an escort requirement *and* a prohibition on intentional inducement of unauthorized disclosures. Nothing prohibits a belt-and-suspenders approach when it comes to a repeated pattern of unlawful disclosures that threaten national security—particularly when the Court had just

rejected a policy that the Department had defended as prohibiting intentional inducement of unauthorized disclosures, and particularly when certain disclosure-related provisions of the Interim Policy are meaningfully narrower than the October Policy. *See NYT I*, ECF No. 23 at 32 (Jan. 30, 2026); *NYT I*, Tr. of Hr'g on March 6, 2026, at 45-48; *NYT I*, ECF No. 41 at 14-16.

The Parnell Declaration's explanation is not "facially dubious," either. *Contra* Op. 28. The Parnell Declaration does not claim that the Interim Policy set out to reduce disclosures of "nonpublic information" writ large, and Plaintiffs' claimed ability to continue procuring "nonpublic information" (while conspicuously not claiming they have still been obtaining classified national security information or controlled unclassified information under the escort requirement) does not undercut the declaration. Instead, both the Parnell Declaration and the Interim Policy make clear that the Interim Policy aims to limit access to classified national security information and controlled unclassified information, which are two specific kinds of "sensitive" information. *See* Op. at 29 n.17. And the Court's concern that the escort requirement does not apply to various categories of non-journalist employees in the Pentagon likewise does not undermine the policy, given the absence of any record evidence that there is a demonstrated pattern of national-security-endangering information-security breaches associated with those employees' unescorted access to the Pentagon. *See id.* at 30.

*Third*, the Department is likely to prevail on appeal because the challenged provisions would not deter a person of ordinary firmness from exercising First Amendment rights. Escort requirements are common in government buildings—both in the Pentagon and elsewhere. This escort requirement, which applies to all journalists with PFACs and does not prevent any journalist with a PFAC from entering the Pentagon, is no punitive deterrent sufficient to support a retaliation claim. The Court's contrary conclusion failed to appreciate the significance of the uncontested

evidence about the minimally burdensome nature of the escort requirement and overlooked that Plaintiffs' concerns about sources' willingness and availability to speak with them are independent of, not attributable to, the escort requirement. *See* ECF No. 11 at 27-29; ECF No. 13 at 6.

II.     **The remaining factors favor a stay.**

The remaining factors are the irreparable harm to the government absent a stay, the balance of equities, and the public interest. *Nken*, 556 U.S. at 426. The D.C. Circuit has already concluded that the government "meets the requirements" for a stay pending appeal of the challenged provisions. *New York Times Co. v. U.S. Dep't of Defense*, 2026 WL 1179440, at *2 (D.C. Cir. Apr. 27, 2026). In particular, the court of appeals credited the Department's evidence that "unescorted access to the Pentagon will increase the risk that journalists obtain and disseminate sensitive information, jeopardizing national security." *Id.* It found that the Department "has thus supported its claim that this aspect of its policy furthers important national security interests." *Id.* This Court brushed aside the D.C. Circuit's conclusion as not "bear[ing] on" the Court's "assessment of whether the plaintiffs are likely to succeed on the merits of their retaliation claim," but even if that were so, it undoubtedly "bear[s] on" the Court's assessment of the irreparable harm to the Department absent a stay, which is the same "non-merits element of the stay test" that the D.C. Circuit assessed. Op. 26 at n.6.

The evidence continues to fully support a stay in the current posture. The Department has again supplied evidence that unescorted access to the Pentagon increases the risk that journalists will obtain and disseminate sensitive information, jeopardizing national security. *See* Parnell Decl. ¶¶ 4-13. No evidence from Plaintiffs has contested that journalists previously obtained unauthorized disclosures of controlled unclassified information and classified national security information on a regular basis. Nor has any evidence from Plaintiffs claimed that journalists

6

continue to obtain unauthorized disclosures of controlled unclassified information or classified national security information at the same rate under the escort requirement.

If anything, the evidentiary picture has shifted to further favor the Department since the D.C. Circuit last stayed an order from this Court barring enforcement of the challenged provisions. Plaintiffs previously opposed a stay pending appeal by claiming that the escort requirement would amount to "exclusion from the Pentagon" that would "deny[] them opportunities to ask questions, confirm information, obtain the Department's perspective, and receive timely updates about military actions across the globe." Appellees' Opposition to Motion for Stay at 18, *Dep't of War v. New York Times Co.*, No. 26-5113 (Apr. 17, 2026). But experience with the challenged provisions has shown those fears to be unfounded. In reality, it is undisputed that no PFAC holder has been unable to enter the Pentagon because of an inability to arrange an escort, that escorts can be available immediately upon request and for impromptu meetings arranged when a journalist is already in the Pentagon for another meeting, that Plaintiffs have been able to enter the Pentagon and meet with sources when they have sought to do so, and that Plaintiffs have continued to be able to get "scoops" under the escort requirement. ECF 11-2 (Valdez Decl.) ¶¶ 6-7, 10-11; ECF 12-9 (Stevenson Decl.) ¶ 17. Plaintiffs' remaining concerns—convenience, and gathering additional "context" and "nuance[]," ECF 12-8 (Supp. Barnes Decl.) ¶¶ 4-5, 7, 12—do not begin to outweigh the national-security interests in maintaining the secrecy of controlled unclassified information and classified national security information.

## CONCLUSION

This Court should stay its preliminary injunction pending appeal. At minimum, the Court should grant a fourteen-day administrative stay to allow for orderly briefing at the D.C. Circuit, just as it stayed its previous orders regarding the challenged provisions. *New York Times Co. v. Dep't of Defense*, No. 1:25-cv-4218 (*NYT I*), ECF No. 59 (Apr. 13, 2026); *see, e.g., Nat'l Tr. for*

*Historic Pres. in the U.S. v. Nat'l Park Serv.,* __ F. Supp. 3d ___, 2026 WL 877779, at *16 (D.D.C. Mar. 31, 2026) (granting a 14 day stay to allow for D.C. Circuit briefing); *Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209, 233 (D.D.C. 2025) (Contreras, J.) (staying a preliminary injunction "for fourteen days so that the parties may seek review in the Court of Appeals"); *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 793 F. Supp. 3d 19, 111 (D.D.C. 2025) (Moss, J.) ("postpon[ing] the effective date of its class-wide order for fourteen days to permit Defendants to seek a stay pending appeal from the Court of Appeals"); *Citizens for Resp. & Ethics in Wash. v. Off. of Mgmt. & Budget*, 791 F. Supp. 3d 29, 60 (D.D.C. 2025) (Sullivan, J.) (granting summary judgment to plaintiffs but entering administrative stay).

DATED: July 2, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

*/s/ Sarah Welch*
SARAH WELCH
Senior Counsel to the Assistant Attorney General
U.S. Department of Justice
Civil Division
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
(202) 514-3180
sarah.e.welch@usdoj.gov

DIANE KELLEHER
Director, Federal Programs Branch

*Counsel for Defendants*